Case number 18-7139. Doris Jeffries, on behalf of herself and all others similarly situated, appellate versus Volume Services America, Inc., doing business as Centerplate and Centerplate NBSE and Does 1 Through 10, inclusive. Mr. Harrington, for the appellate. Mr. Mayer, for the appellate. Good morning, ma'am. Please report. Mayor Fair from Mississippi? Yes, Your Honor. I will. I will. I'll try to keep the draw to a minimum, given my time limitations. I would like to reserve five minutes of my time, if I may, for rebuttal. Today's question is whether Ms. Jeffries' harm constitutes a concrete injury sufficient to create Article III standing. And the answer to that question is yes. We need look no further than this court's opinion and the owner-operator decision cited in our briefs, where the court followed the mandates from Spokio that we look to the common law history and the judgment of Congress in determining whether Congress intended to confer rights, the invasion of which creates standing. And here, there is no question that Congress intended to confer legal rights to consumers like Ms. Jeffries. In fact, as expansive legislative history shows, after hearing from 100 witnesses from the credit card industry to consumer groups to government officials, Congress identified information. First, it ID'd a problem, which was identity theft and card fraud, and stated it was epidemic in this country. And then Congress, after IDing the harm, identified the key bits of information that one would need to effectuate that harm. Then Congress went even a further step and defined the mechanism by which consumers could be protected from that harm by stating that no more than the last five digits of a card number can appear on a receipt given to a consumer at the point of sale. And that's a key phrase that I will get to. So here, unlike in Spokio... Now, which is the key phrase, at point of sale? Well, I think that is a key phrase. Why? Because if the court would like to talk about dissemination, for example, an owner-operator, only two of the drivers had standing because there was no dissemination of the other three's information. Right. Here, we have the exact dissemination that Congress said can't happen. That is the merchant disseminating the card numbers on the receipt given to the consumer, Ms. Jeffries, at the point of sale. That's where we look for whether this information, this protected information, was disseminated. Not whether Ms. Jeffries allowed the information to be disseminated to a third party. I agree with you that this is a dissemination case because in preparing for it, I kept thinking about the merchant who keeps the information to himself and then disseminates it to the owner of that credit card. It seems to me that Spokio or whatever is similar in that the dissemination of incorrect information was all that was needed to find harm. Here is the dissemination of correct but too much information that is the harm. Yes, Your Honor, I agree. I would expound on that and say that in Spokio, the statutory provision at issue there stated that consumer reporting agencies had to implement reasonable procedures to achieve maximum possible accuracy of information. But Congress did not identify what bits of information is important or not important. Which is why the court remanded to the Ninth Circuit to find out if Mr. Robbins, the plaintiff there, if the information he was complaining of like age and education level, marital status, was that truly important bits of information. Here, though, we don't have to guess. Here, Congress has already identified. And this is also unique. David, Congress has identified this twice. In 2003, leading up to the passage of FACTA, Congress identified card numbers as the single most crucial bit of information that a fraudster would need to perpetuate card fraud. So tell me, how is this different from the situation where I give my card to the merchant and the merchant gives it back to me and that's all that happens? It's different in that we've now added with the receipt, the receipt of the receipt, we've now added another layer, another point of access, if you will, for a fraudster to perpetuate fraud. In that now we have a sheet of paper that has all that card information on it, that has the expiration date on it. And here, Centerplate left nothing to the imagination. They printed all 16 digits of Ms. Jeffrey's card number and her full expiration date. So it's a factual impossibility that Centerplate could have violated the statute any more than it did. Is there anything in that statute, I haven't looked, about the name of the cardholder or the security number on the back, that three-digit number? If you're using your credit card on a telephone, they always ask for that three-digit number. Correct, correct. And Congress knew that. Five years later, when they passed the Clarification Act, and Congress did not state that the name couldn't be printed. But the reason that that is irrelevant is a wrongdoer does not need the name on a receipt to be able to perpetuate card fraud. Congress, again, they didn't do this in a vacuum. They heard from experts from the credit card industry. And the credit card industry and government officials pointed to numbers being the most important information, not names. And we cite to a study in our brief, even though this is a facial challenge and we didn't need to present facts showing how one would perpetuate card fraud, but we did. And there's a study that shows that with just the first six digits, a fraudster. You've got the best case. If you can't win this case with all 16, then no case can be won. The only additional thing to be added would be expiration date, which you argued. Correct. But play it out a little bit more for me, if you would. You definitely got dissemination at point of sale, which Congress is setting. You're resting very heavily, and I think forcefully, on Spokio's indication that Congress has the power to define injuries and to articulate the chains of causation that give rise to the controversy. But, and this is where we're dancing on the pin, so to speak, with Spokio, because they're kind of going back and forth. You've still got to show concreteness. And so how are you framing it? There's no doubt that the defined injury is here, but Spokio says you've got to put it in terms that are concrete as we're explaining it, which is another question. So what's your answer to that? Yes, sir. Spokio did not state that Congress can't confer legal rights, the violation of which are de facto concrete. And so that's the first prong of our argument, is that where Congress here, where we have such an extensive legislative history about the importance of card numbers and the importance of truncation, it is crystal clear that Congress intended to confer rights. Now, wait, are you talking about risk of harm being real here? Because Spokio also says if you put a zip code in their case, and Congress says the inclusion of a zip code is part of the, is among the defined harms that we have in mind, that's not going to be enough. In other words, Congress can't overwrite Article III. No question. Okay, so that's what I'm really talking about. So why is this within the confines of the Article III injury as opposed to outside of? Too speculative, no risk of real harm. In other words, you've got to make it, you've got to connect it up with risk of real harm, not speculative. So what in your mind is it that is an injury that's discernible? Right. Beyond the argument that this is a de facto injury violative of legal rights conferred onto. Yeah, but you just agreed with me merely because Congress says it still isn't going to be the winner. It's like the zip code. Congress can say we really are upset that zip codes are being put on these receipts. And the court said, but so what? True. No concrete injury. True, except that here we have Congress's findings. In other words, it's not a decision, as I said earlier, it's not a statute that was passed in a vacuum. When we look at the legislative history, it's quite clear that Congress was within its power to elevate the intangible harm of receiving a receipt. Because you're saying there's a real risk of harm. There is a real risk of harm. A real risk of harm is what? Point of dissemination. Now, go from there to what's the real risk of harm that you think Congress had in mind that we can credit? Two things on that. The first is the risk of harm was increased the moment that receipt was printed and handed to Ms. Jeffries. That was the increased risk of harm. The risk of harm was only blunted in this case because Ms. Jeffries was diligent in not throwing away her receipt or allowing it to come into a third party's hands. So when we're looking at this back in the context of the statute, it is clear that the increased risk of harm occurred the moment that Ms. Jeffries received that receipt. It was only through her own actions that she was able to blunt some of this risk of harm. So the risk of harm identified by Congress, which is consumers getting receipts with their card numbers on them, that occurred. That is the concreteness. Because of an increased possibility of identity theft? Had she taken that receipt and just laid it on the counter, a person would have had entire card numbers. That's what your argument is. It increases the possibility of identity theft. Absolutely. And again, the risk was only decreased because she kept up with it. And that is my second point on that is the additional burden argument. They say that she had to take on the duty that Congress placed on the merchants to protect that information. Congress said this is important information that needs to be protected. Don't disclose this information when you're dealing with consumers. Senator Blake said, I'm going to not only disclose more than the last five, I'm going to disclose all 16. Your argument, Judge Rogers, is it's different from that hypothetical because the burden really is on the consumer who owns the credit card. They foul it up. Too bad. Whereas the merchant creating a receipt has done something in addition to create the risk of misuse of the credit card number. Is that what you're saying? That's correct. So there's now an extra sheet of paper with her card information. All 16 digits. And so the argument would be it's not only the creation of the receipt of paper with the number, all the numbers, but that the merchant did nothing to protect that piece of paper. In other words, the merchant could have said, oh, my goodness, I put that on there. Let me destroy it immediately. That's correct. The merchant not only did nothing to protect her information, but in this particular situation, as we pointed out to the district court, when Ms. Jeffrey saw that she had all 16 digits, she went back to the cashier and said, is this right? Can you print another receipt? And the employee was able to pull that receipt a second time, which means that. With all 16? With all 16 digits. Which means that employees can not only – every corporation keeps this credit card information. There's no question about that. But the question is, and this is where we start to get into the factual scenario, is not every employee has access to that data. And here we're able to see that an employee was able to access her full card number. Let me ask you, aren't you giving away too much? Because in owner-operator, the dissemination of the incorrect information was enough for the two truck drivers, and Judge Tatel, in his opinion, said we don't have to wait until an employer sees it and says, I'm not going to hire you because of this safety record. And here it seems like the dissemination is the harm, and is the harm that the statute protects against. And it's more than the risk of harm. It's the harm itself from the dissemination. And so we're talking about the increased risk being either something additional. It's certainly something separate. But why do we need an increased risk if the dissemination itself is the harm, as in owner-operator, and once it was disseminated, they didn't have to wait for an injury to the truck drivers. They didn't have to say, I missed out on this job. Correct. That's correct. Now, if I intimated that we do need that, I apologize. I did not mean to say that. I was answering Judge Edwards' question. Wasn't that third-party dissemination in owner-operator? It is. That was third-party dissemination. Well, I mean, that's why you started out saying dissemination is point of sale. Correct, correct. That's an important distinction. Well, absolutely. It's very easy to understand the cases where they say the dissemination is to a third party. Absolutely. I'm out of time. Go ahead. Answer. Well, I just want to say, I thought I had made it clear, that's our first argument. This is a de facto injury. The moment that receipt got printed is the moment a concrete injury occurred. Because now Ms. Jeffries is in possession of a piece of paper that has not just more than the last five digits, but her entire card number, all 16 digits and the expiration date. Printed the receipt and gave it to someone. I'm sorry, Your Honor? Printed the receipt and gave it to someone. We are printing. It's not as though it's an internal accounting mechanism. Yes, Your Honor.  Gave it to the plaintiff at the point of sale. That was the dissemination. And I don't think we have to show any more. I was merely pointing out there are other ways in which we show a concrete harm here. Yeah, I mean, if you had a situation like owner-operator where you're disseminating to a third party, you could have said, I'll rest on my grave and walk out. There's 16 figures. I don't think we would be here if we had that. So the explanation, that's why I was curious to see how you're playing out the risk of injury here, et cetera. I mean, I understand your argument. I just want to make sure. Yes. Let me go back to Spokeo then on remand, because isn't that when the Ninth Circuit said that was a type of dissemination in that it was on some website or something? Right. It was accessible by prospective employers. But that was somebody getting access to that website. And in owner-operator, I thought, and I'll go back and reread it, I thought this information had to comply with the Fair Credit Reporting Act, and it was just there in the Department of Transportation files. Correct. How was it further disseminated? Well, there the statute had issued an owner-operator contemplated within its framework that third parties would have access to it, that prospective employers would have access to it. Well, why couldn't you make the same argument that the handing out of this receipt is going to be disseminated, not to third parties, but certainly to the owner of it? And that's what they wanted. They wanted to stop the dissemination, period, just like they did in owner-operator and just like they did in Spokeo. Absolutely, Your Honor. That's the first line, is that it was disseminated the moment she got it. Well, that's why you love the statutory language, point of sale, because that answers the question. If Congress has the right to define the injury, they've done it in the statute. Where is the dissemination occurring? It doesn't have to go further than point of sale, as long as we can conceive of some potential injury associated with that. I mean, they said point of sale. Correct. And given that we should have some deference to Congress, it makes the case even stronger that Congress revisited this issue in 2003. Five years later, they revisit the issue and come to the exact same conclusion. Card information is the single most crucial. Card numbers are the single most crucial piece of information necessary. What do your historical analogs like? Do you like the Eleventh Circuit description of where we look to the common law? Moransky? No, anywhere. I don't care where you look. What are yours? I mean, where would you rest to the extent that we have to find some common law analog? What? Your Honor, I think that Moransky is a great opinion. I quit to my co-counsel. I'd like to just come here and just read Moransky line by line because it's a good opinion, but it's a court that's not binding on this court. No, but I mean, what would you rest on the common law analogs? What do you cite to the extent that Spokio says we both look to the language of Congress uses and common law equivalents? Right. Common law, the common law connection isn't disputed in this case, but it's a de novo review. I thought it was conceded. Yes. Evasion of privacy. Okay. Privacy rights. That's where you're resting. Okay. Yes, Your Honor, and because this court- It's my trick question. I just wanted to make sure I had it in my head. It is. Evasion of privacy is not contested, but Moransky does add the other two analogs of breach of confidence, breach of implied development. Let me ask just one other question following up on Judge Edwards' comment. He was saying that the statutory text on which you rely is key. So long as the court, I thought he was saying, could conceive of some kind of harm, Spokeo suggests that the court has to do some imagining here, or is it saying that the court must look to what indication there is in the legislative history of what Congress had in mind? It's one of those odd situations perhaps where the Supreme Court may be telling the courts to look to legislative history. I just want to be clear. Suppose you had a situation where all you had was the statutory language, and you didn't have this legislative history. Right. Well, I think then the deference to Congress becomes perhaps not as robust, where we're wondering what is the statutory language. Well, it wrote a statute with plain language. Exactly. Yes, I agree. We would look at the plain language of the statute, and there are tons of case laws that said we don't have to look further than that. I mean, suppose it's like Mission Impossible. You have the same language, no legislative history. As soon as they turn over the receipt, it burns up. Yes. Is that going to be enough on the Spokeo? You've seen Mission Impossible, right? No, you haven't? No, I've seen the old ones. Well, it's the same one. It burns up. Once you get a message, it's gone. It self-destructs. So the receipt is given, and as soon as I touch my receipt, it burns up. So it's gone. Correct. Is that going to be enough? No legislative history. Your Honor, that is a much tougher case. Thankfully, we don't have that. Okay. Thank you, Your Honor. Mr. Baier. Good morning. Good morning. May it please the Court, my name is Mark Baier. I represent the Appalachian Volumes Services America, Inc., which is known as Centerplate, and I will refer to it as Centerplate in my argument. In the three-and-a-half years since Ms. Jeffries received her credit card receipt, she's not alleged any identity theft. She has not identified any use of her credit card in a fraudulent manner. She has not alleged any data breach at Centerplate that would have disclosed her financial information. Why do you think she has to do that? Pardon me? Why do you think she has to do that? I mean, I understand why you're making the argument, but it begs the question. If Congress has said the thing that they are addressing is dissemination at point of sale, that's what we focus on. It doesn't matter whether there is subsequent, and there is a conceded historical right of privacy connection, and there is some threat that Congress explained that they were concerned about, and you're sitting in the worst-case scenario, all 16 digits. So all of the other cases, to my mind, are irrelevant. They don't get here. This is all 16. So all these other cases just don't get there. Your Honor, I think I'd say a few things in response to you. First, of course, we would prefer not to have all 16 digits on that receipt. Of course you would. Concede that. But I agree with Judge Henderson that this is about dissemination, but not dissemination back to Ms. Jeffries. It's about dissemination to a third party. No, no, no. What, dissemination at point of sale? What does that mean? I'm going with the statute, so I'm not even being imaginative. I'm just looking at the statute. It's dissemination at point of sale. The only person there is the cashier and then the person who's now suing you. And I'm looking at the statute and the cases that interpret the statute. You don't have one. You don't have the correct situation in any of these other except for the 11th Circuit. And they don't even have 16 digits. Well, Your Honor, with all due respect, I think we do have a case, and that is the Bassett case out of the 9th Circuit, where they set the issue in the case, in the very first paragraph of their opinion, as, quote, is receiving an overly revealing credit card receipt, unseen by others and unused by identity thieves, a sufficient injury to confer Article III standing? And they decide no, it is not. And what we have here are two lines of cases. Both lines of cases lead to the determination that there is no Article III standing. Now, there's one line of cases that say, well, if it's just an expiration date, that's not going to cause harm. Or if the first six digits, which really relate to the identity of the bank, that's not going to cause harm. And so that's how those cases decide the issue. But in Bassett and in the Myers case out of the 7th Circuit, they do say that dissemination to a third party is required. And I think it goes back to the historical antecedent in the common law. It goes back to things like invasion of privacy. There you have private information that is somehow disseminated to a third party. Or breach of confidence, where I share with you confidential information, and either you use it for your own benefit or you share it with Judge Henderson, that's a violation of the statute. But again, it's dissemination to a third party. We don't have that here. And so what's the real harm to Ms. Jeffries of receiving back a credit card receipt, albeit with all the digits? It's no different for her as receiving back the credit card itself. That's how these transactions work. You turn over your credit card to the merchant. The merchant runs through their system. I think what the 7th and 9th Circuit don't deal with is, one, the statutory language, which is pretty clear, and then Spokio, which says, Congress has the power to define injuries and articulate chains of causation that will give rise to a case of controversy where none existed before. They're very clear on that. They're saying Congress is in play here, and they can create. And if you don't have a mission impossible situation, then it seems to me you're climbing a high hill against Spokio, because Spokio says Congress can do this. They can say this is the injury. And typically, I think the sentence you're quoting from, Your Honor, is where the court is talking about these common law antecedents where the injury is baked into the cause of action, like an invasion of privacy. The court goes on in the next paragraph to say you have to show a concrete injury beyond just a statutory violation. And the majority of the circuits, all but the Muransky case in the 11th Circuit, go my way and say, no, you've got to have more. You've got to have disclosure to a third party. Yeah, but I'm saying they're not looking at the language that I'm looking at. And I don't see it set up the way you're saying. The court is saying in addition, because Congress is well positioned to identify intangible harms that meet the minimum requirements, their judgment is instructive. And then they go on to say they have the right to define injuries where none have been conceived of in the past. They have that responsibility, and they can undo it. And it's saying, in other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified. But that's referring back to these common law cases. No, no, no, it's referring back to the statute itself, point of sale. That's the harm that Congress has defined. They're saying you don't have to define anything else. They're not saying you have to show a common law analog and make it on those terms. They just say that's a place to look to get some sense, get some guidance as to whether this is really brand new or it has some antecedents. I mean, that's all. There's nothing in the Spokio says you can't be making that argument. The Spokio says you must find a common law analog that's on all fours, and if you can't, you lose. No, I'm not saying that. Okay. I'm not saying that. What I am saying is that the plaintiff in this case needed to show some actual or imminent concrete harm as a result of receiving this credit card receipt. She concedes she didn't share it with anybody. She kept it. The only person she shared it with was with her lawyer, and she held on to it for four days short of two years before even filing the lawsuit. And no harm to her occurred. She didn't suffer any identity theft. She did not suffer any fraud. There was nothing, absolutely nothing. The only injury she can identify is the fact that she had to hold on to the receipt. No different than if she had to hold on to the credit card itself. There's no extra effort. There's no extra burden. Some people actually prefer to keep the receipts, but keeping the receipt itself is not enough harm to create the concrete injury that Spokio requires. What it does is to create a risk of harm, and that's what the Court is talking about, and that is clearly part of their decision. Having that information on a piece of paper creates a risk of harm that Congress decided they were not going to allow vendors to impose on consumers. And there is an increased risk of harm. That piece of paper can be lost, misplaced. She's got to worry about how to deal with it. That's what Congress had in mind, and that's what the legislative history indicates. And you're in the worst case where all 16 digits have been exposed. But our point is, Your Honor, none of that happened. No, no, no. Risk of harm is not actual harm. That's where your argument makes no sense to me. You're leaving out all of Spokio that talks about risk of harm as being relevant, and they're citing cases there. It's not actual harm. It's merely the risk of harm. Imminent risk of harm. I don't get certain information. There's a risk of harm to me. I never suffer it, but I can sue for failure of that information, the court said. It would have to be imminent risk of harm, not just a theoretical. With respect to the lost information, that is not what they say. That is absolutely not what they're saying. Your Honor, I believe that the cases interpreting Spokio all talk in terms of imminent risk of harm. You know what? Sometimes our assistant circuits get it wrong, and that's why each circuit takes it on its own terms. I think that maybe the Supreme Court is going to have to look at Spokio again and tell us all what they do have in mind. But when you're talking about risk of harm, and I don't see that. It says this does not mean, however, that the risk of harm. It doesn't say this does not mean, however, that the imminent risk of harm cannot satisfy. That's not what the decision says. Your Honor, I'd like to talk about the circuit that did get it wrong, which is the Eleventh Circuit and the Moransky opinion that the plaintiff's appellants rely so heavily on. Because that was a case in a very unique procedural posture, and I just want to point that out to the court. In Moransky, which, by the way, there's a motion for rehearing pending and has been pending since the fall, and the mandate has not been issued. But in Moransky, we have a class action where the parties settle. The plaintiffs and defendants agree. Defendants were willing to pay a substantial amount of money to settle the case. No party, including the defendant, ever raised standing of the plaintiff as an issue. And it wasn't raised until the final approval hearing on the class settlement, in which case an intervener appeared, a Mr. Isaacson. He had a bunch of complaints about the settlement. And one of the things he raised, orally, not in writing, was the fact that he did not believe the plaintiffs had standing. The court approved the settlement, and it went up to the Eleventh Circuit on appeal, driven by this objector, this intervener, Mr. Isaacson, who was claiming no standing on the part of the plaintiff. So put the court, the Court of Appeals, in an awkward position. They had a situation where the defendant was willing to pay a generous settlement to resolve the case. In fact, the Eleventh Circuit says the settlement amount was better than what the plaintiffs would have recovered at trial. And so if they found no standing on the part of the plaintiff, that settlement pot disappears. There is no settlement. And if you read the opinion, and particularly the concurring opinion, there is an issue whether or not the intervener even had standing to contest the standing of the named plaintiff. Apparently, that concurring opinion only could secure the single vote. But perhaps that's why the motion for rehearing is still pending. Obviously, we don't know. But Moransky is a very tenuous opinion because the Court of Appeals was in this position where it wanted to approve the settlement, but you have an intervener raising, for the first time, a standing argument. I mean, for what it's worth, and this is only one judge talking, I want you to know that I had some troubles with your position before I ever read the Eleventh Circuit case. So, I mean, that is not what's driving me, what's driving my concern to Spokio. And your resistance to what they're saying about risk of harm, and they are talking about situations, they have a whole paragraph on it, which is saying if Congress is defined to harm a certain way, it may be very difficult for a plaintiff to show any immediacy or concreteness at the level that you're talking about. Nonetheless, it's an injury for Article III purposes. The information cases for voters, whatever, they can't show any immediate harm. And they may never be able to show any, which is what you're demanding when you say she's got to leave the store and show that receipt to other people so they might use it. Then maybe that will satisfy it. That's not what Spokio says. But it is what the Bassett says in the Ninth Circuit. It is what Meyer says in the Seventh Circuit. When I get up to hit, I'm going to always go to the Supreme Court because I have to. Okay, and I'm reading this whole paragraph. I've read it two or three times as you're arguing, and you're ignoring it. Risk of real harm can be met in situations where it's very difficult to prove or measure. Those are the court's words. That's right. And then in the following paragraph, Your Honor, it goes on to say, on the other hand, Robbins cannot satisfy the demands of Article III by alleging a bare procedural violation. In the prior paragraph, they say procedural violations may be enough, even though you can't prove anything beyond the procedural violation, which is kind of surprising and a lot of aluminum. But nonetheless, they say it in Spokio, which is really undercutting your position. And I have to agree, Your Honor. These two paragraphs of Spokio create an internal tension that may not be the justice's best work. And I think maybe you're right that it's going to have to be clarified down the road. But as the majority of the courts interpret this language, they find that there has to be some additional concrete harm. It's not enough to say, I got a receipt with too many digits. And there's too many cases out there where ultimately the courts decide there is no standing, even though too many digits are printed. I would have been impressed with those cases had they dealt with the statutory language. They don't. Point of sale is huge, and it fits with Spokio. Spokio says Congress has the right to do this. Congress can define the injury. And the statute here says the injury, point of sale, dissemination. You clearly got dissemination. It's just that they want more dissemination. And, Your Honor, that comes back to our basic disagreement. I don't think there has been dissemination. I think returning the information to the consumer is not dissemination, but dissemination is contemplated by the statute or by the cases that interpret the statute. I think just all of you look at the legislative history and look at the statute, it's hard to resist what I'm saying, because that's what Congress was concerned about. Well, Congress. Print out that receipt with 16, your worst case scenario, your worst nightmare, all 16 digits. Congress was concerned with identity theft. Right. And identity theft requires a dissemination of information to the bad actor. It doesn't require identity theft accomplished. We're talking about risk of injury. And if you produce that piece of paper, you have increased the risk of harm that Congress was concerned about, because you have 16 digits on that piece of paper. And that piece of paper may be misplaced, lost, whatever. That's what Congress was concerned about. But it was not in this case. Your Honor, my time is up. So I just ask that the opinion of Judge Kohler-Catelli be affirmed. Thank you for your time. Thank you. Does Mr. Harrington have any time? Mr. Harrington does not have any time. You want to take a minute? Yes, Your Honor. I think that's all I need. If you have anything to add. Just a quick point. Centerplate argues that, in effect, that a consumer does not have standing for procedural or for statutory violation unless that plaintiff suffers the ultimate harm that Congress meant to prevent in the first place. That is their argument, that until or unless Ms. Jeffries has her identity stolen or her card is compromised and somebody runs up thousands of charges, she has no cause of action. At all. No concrete injury. I know that's the way counsel started today, but I read the brief a little differently. I agree that is one argument, but I think there's an intermediate step. That it's not enough just to hand the receipt back to the patron. Right. Rather, something else must happen. Not that her identity theft is actually stolen, but I think when you read the cases, courts are saying something else has to go on. You know, she left it on the table. She put it in her purse. She's casual about it, et cetera. That's what you see, and I thought that's what the district court was trying to understand in terms of this court's interpretation of some of these cases as to what the allegation had to be with respect to harm. And I think if we are going to look at what happens after Ms. Jeffrey gets the receipt, then we have to consider her having to safeguard that receipt. And as Maransky pointed out, that is an additional harm. And Maransky's not the only court to have said that. We've cited another case in our brief. So do you see that kind of concern that even if it's a trivial or minimal harm, Congress decided it was enough? I mean, that's the argument. Well, I think that it is certainly an identifiable trifle, and that's all one needs show to create standing here, especially in light of this. A trifle? No, you don't want to go there. You do not want to go. The Supreme Court has put that to rest. Yes. A trifle is not doing it except on a motion to dismiss, and no one's going to leave you on a motion to dismiss. They'll get you on summary judgment quickly. Right. Well, this is on a motion to dismiss. Well, but you go back and you're on summary judgment. I mean, a trifle is not the right word. It's got to be more than that. In this situation, you have the statutory damages, so it sort of forces, it seems to me, any defendant to come up with handing the receipt back to the patron, even with all the numbers on it. It's not enough. I mean, as I understand your argument and the answer to what counsel argued in the brief and what Judge Rogers has asked of you, the additional safeguards are not a trifle. No. Because the consumer, Congress has said, you don't have to worry about this because we are telling vendors, you can't put this information on a receipt, so you don't have to worry about safeguarding that piece of paper. You can be sloppy with it, whatever. If you run into someone who doesn't do that, you've lost that right to be sloppy, so to speak, to lay it wherever and worry about whether someone has seen it. It seems to me that's exactly, that is not a trifle. That is what Congress is saying, is I can carry all kinds of receipts and misplace them all the time, and I think what Congress was saying is not to worry, Harry, because they can't put all 16 digits on your receipt. Right. I in no way mean that a safeguarding receipt is a trifle. I was merely alluding to the fact that, as this Court said, at a motion to dismiss stage, the Article III standing burden is a, quote, low bar. That's all I was emphasizing. Yeah, well, what I'm emphasizing for you is that's, you know, that's, you've got to think bigger than that, because anybody's going to take you to summary judgment. No, I certainly do. You've got to have the evidence. Absolutely. Absolutely, Your Honor. Okay. Thank you very much for your time. Thank you. Stand, please.
judges: Henderson, Rogers, Edwards